AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  1:21mj02647 Goodman - 3CBU |
| YOHISMY PEREZ GONZALEZ, | ) | |
| a/k/a "Peseta," | ) | **4:21mj0740** |
| _____ | ) | |
| *Defendant(s)* | | |

United States Courts
Southern District of Texas
FILED

*April 07, 2021*

Nathan Ochsner, Clerk of Court

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___February 11, 2018 - July 8, 2020___ in the county of _____Miami-Dade_____ in the
___Southern___ District of ___Florida, and elsewhere___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(iv); 1324(a)(1)(B)(i); and 1324(a)(1)(A)(V)(l) | Conspiracy to encourage and induce aliens to enter the United States for financial gain and encouraging and inducing aliens to enter the United States for financial gain |
| 18 U.S.C. § 371 and 8 U.S.C. § 1324(a)(2)(B)(ii) | Conspiracy to bring an alien into the United States and bringing an alien into the United States for financial gain |
| 18 U.S.C. § 1201(a)(1) and 1201(c) | Conspiracy to commit kidnapping and kidnapping |

This criminal complaint is based on these facts:

SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Aaron D. Spielvogel, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
___Face Time_____(specify reliable electronic means)

Date:  ___4/2/21___

_____
*Judge's signature*

City and state:  _____Miami, Florida_____    Jonathan Goodman, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Aaron D. Spielvogel, being duly sworn, depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.     I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since 2016.  I am currently assigned to the High Intensity Drug Trafficking Area ("HIDTA") Task Force, in the FBI Miami Division, where I am responsible for conducting investigations of transnational organized crime, regarding violations of federal laws, particularly those laws found in Titles 8, 18, 19 and 21 of the United States Code.  My duties include investigating violent crimes that involve human smuggling, kidnapping, and extortion, among other crimes.  I am, therefore, an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, which empowers me to conduct investigations of, and make arrests for, violations of Title 18 of the United States Code.

2.     This Affidavit is submitted for the limited purpose of establishing probable cause that Yohismy Perez Gonzalez, a/k/a "Peseta," ("**PEREZ GONZALEZ**") did knowingly and intentionally:

a.  Conspire to encourage and induce aliens to enter the United States for financial gain, in violation of Title 8, United States Code, Section 1324(a)(l)(A)(iv) and 1324(a)(1)(B)(i), all in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I);

b.  Encourage and induce aliens to enter the United States for financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv);

c.  Conspire to bring aliens into the United States for financial gain, in violation of Title 18, United States Code, Section 371;

    d.   Bring aliens into the United States for financial gain, in violation of Title 18, United States Code, Section 1324(a)(2)(B)(ii);

    e.   Conspire to commit kidnapping by using the mail and any means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of the commission of the offense, in violation of Title 18, United States Code, Section 1201(c); and

    f.   Commit kidnapping by using the mail and any means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of the commission of the offense, in violation of Title 18, United States Code, Section 1201(a)(1).

3.     The statements contained in this Affidavit are based on my personal knowledge, as well as information provided to me by other law enforcement officers, including those based in Mexico, law enforcement support personnel, and civilian witnesses.  Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint, it does not include every fact known to me in connection with this investigation.  I have only set forth the facts that I believe are necessary to establish probable cause for the offenses described in this Affidavit.

## PROBABLE CAUSE

### BACKGROUND

4.     The Federal Bureau of Investigation ("FBI"), Homeland Security Investigations ("HSI"), and law enforcement in the states of Yucatan and Quintana Roo, Mexico, have been investigating a Transnational Criminal Organization ("TCO") that has engaged in alien smuggling and kidnapping for more than a decade.  The investigation has revealed that members of the TCO

organized numerous smuggling trips per year in which they smuggled Cuban migrants from Cuba into the United States, by way of Mexico.

5.      Upon smuggling the Cuban migrants out of Cuba and into Mexico, the members of the TCO demanded that the Cuban migrants pay them a fee of $10,000 in United States dollars (USD) before completing the journey into the United States.  If the Cuban migrants could not pay the smuggling fee, the members of the TCO locked them in a house, threatened them, and forced them to call their families to obtain the money so that they could be released.

6.      To coerce the relatives into paying the fee, the members of the TCO sent them threats, pictures, and video recordings of the Cuban migrants being shocked with a stun gun and/or beaten.  The members of the TCO also threatened to kill the victims if they did not receive the $10,000 USD.  If a relative was able to pay the $10,000 USD ransom, the members of the TCO would release the respective victim and send him or her by bus, airplane, or other means, to the Mexican-United States border with instructions to seek asylum.  For those victims whose relatives could not pay the fee, the kidnappers tortured them while they continued to attempt to collect their fee.

7.      During the investigation, the FBI and HSI interviewed cooperating defendants and other co-conspirators who were members of the TCO, some of whom have pleaded guilty to human smuggling and other related charges.  These individuals proffered that they and other members of the TCO used vessels and engines, which were stolen from South Florida and elsewhere in the United States, to facilitate the smuggling operation and to finance their criminal enterprise.  They transported the vessels to Mexico, sometimes loaded with firearms obtained in the United States.  Once the vessels arrived in Mexico, the members of the TCO re-painted and created fictitious

3

registrations for them.  The members of the TCO then either sold the vessels or used them to transport the Cuban migrants from Cuba to Mexico.

8.       On or about January 18, 2021, the FBI received information that an individual, later identified as **PEREZ GONZALEZ**, participated in the alien smuggling/kidnapping operation. Specifically, the FBI learned that **PEREZ GONZALEZ** participated in a conspiracy to kidnap and torture Cuban migrants and extort their families for ransom.  After conducting several interviews, including interviews of VICTIMS 1 and 2, the FBI determined the following:

<u>VICTIM 1</u>

9.       In or around February of 2018, VICTIM 1, along with approximately seven (7) other Cuban males and four (4) Cuban females, boarded a go-fast style vessel in Cuba believing they were going to be smuggled into the United States.  VICTIM 1, along with the other migrants were instructed to stay seated on the deck of the vessel while they were underway at sea.  VICTIM 1 observed two Cuban male crewmembers onboard; one was the captain who used the alias "El Nino,"[1] and the other Cuban male crew member who used the alias "Peseta," was later identified as **PEREZ GONZALEZ**.

10.      During the voyage at sea, prior to the migrants arriving by boat in Mexico, a second vessel approached the boat that was transporting VICTIM 1 and the other migrants.  The crew members from the second vessel refueled the vessel transporting the Cuban migrants, and then the second vessel departed.

---

[1] "El Nino" has previously been identified as Reynaldo Crespo Marquez. Marquez was arrested on September 2, 2020 pursuant to a Federal Criminal Complaint, Case No. 20-MJ-3346-McAliley, for smuggling Cuban migrants and kidnapping. Marquez was indicted on January 21, 2021, case no. 21-20050-CR-Altonaga/Torres.

11.     Approximately a few hours later, the migrants arrived at a beach in Mexico.  When the migrants arrived, they waded in the water until they reached the beach where one of the kidnappers met them and put them in a van.  VICTIM 1 and the other migrants were transported to a house that the kidnappers referred to as "La Finca."  Based on my training and experience, I know that the Spanish word "La Finca," translates to the English word, "the farm."

12.     When the migrants first arrived at "La Finca," the kidnappers instructed the migrants to take off their clothing and change clothes.  The following day after the arriving at La Finca, the kidnappers began to inquire about the fee that the migrants were supposed to pay to be smuggled out of Cuba.  When it was VICTIM 1's turn to provide the phone number of WITNESS 1, who is VICTIM 1's father who lived in Texas, VICTIM 1 did not have WITNESS 1's phone number memorized.  VICTIM 1 had to first contact a cousin who lived in Miami, Florida to get WITNESS 1's phone number for the kidnappers.  The kidnappers called WITNESS 1 and demanded $10,000 USD for VICTIM 1 to be released.  WITNESS 1 told the kidnappers that he had not sent for VICTIM 1 and that he could not pay the ransom.  The kidnappers told WITNESS 1 if they did not receive the money, they would harm VICTIM 1 until they were paid. VICTIM 1 did not bring this amount with him on the trip, hoping that his family would help him pay the fee.

13.     While VICTIM 1 was kidnapped for several days waiting for his ransom to be paid, and the kidnappers threatened VICTIM 1 and the other migrants, telling them how previously they had put a migrant in a cage with a fighting dog because the migrant was not able to pay the ransom. While VICTIM 1 was kidnapped, one of the other female Cuban migrants confided in VICTIM 1 that **PEREZ GONZALEZ** attempted to sexually assault her.  VICTIM 1 also witnessed

5

individuals referred to as "El Chupa,"[2] "El Nino," and other kidnappers enter the room where they were keeping another migrant locked up. While the kidnappers were in the room with the other migrant, VICTIM 1 heard the migrant screaming and then observed the kidnappers exit the room sweating and with blood all over them. The kidnappers discussed finding a knife and black plastic bags to dispose of the migrant's body if he died. VICTIM 1 then went into the room with the other migrant and observed that he had been beaten so badly that he couldn't drink water, but ultimately survived. VICTIM 1 stated that the other migrant was beaten and then released in Mexico because he was unable to pay the kidnappers, and then was later deported back to Cuba

14.      VICTIM 1 was kidnapped for several days by the kidnappers before he was able to secure the full payment for his release. WITNESS 1 eventually provided the kidnappers with proof that he paid the ransom demand and then arrangements were made to get VICTIM 1 into the United States. VICTIM 1 was sent with one other migrant by bus from Merida to Cancun, Mexico. VICTIM 1 was met by another co-conspirator who housed VICTIM 1 for approximately three days until he was able to obtain a Mexican identification document for VICTIM 1 that was used for VICTIM 1 to fly from Cancun to Reynosa, Mexico. Once VICTIM 1 landed in Reynosa, Mexico, he was given money to pay other co-conspirators waiting for him in Reynosa, and then was directed to cross the United States border and claim asylum. The kidnappers told VICTIM 1 to tell the United States Immigration Officials that he arrived at Isla Mujeres, Mexico on a home-made raft and that friends helped him get to the United States border.

---

[2] "El Chupa" has previously been identified as Jose Miguel Gonzalez Vidal a/k/a "El Chupa." Gonzalez Vidal was arrested pursuant to a Federal Criminal Complaint, case no. 20-MJ-04078-EGT, on December 3, 2020, for smuggling Cuban migrants and kidnapping. Gonzalez Vidal was indicted on January 21, 2021, case no. 21-20050-CR-Altonaga/Torres.

15.     On January 18, 2021, WITNESS 1 was interviewed by the FBI and HSI.  WITNESS 1 received several phone calls from the kidnappers in Mexico, using the telephone application WhatsApp, where they told WITNESS 1 they had kidnapped VICTIM 1 and they would harm VICTIM 1 if WITNESS 1 did not pay them $10,000 USD.  WITNESS 1 was able to borrow approximately $10,000 USD from a friend and then sent the money to the kidnappers in separate transactions to names and account numbers they provided.

16.     The FBI served subpoenas on Western Union, and the subpoena returns have confirmed that WITNESS 1 made one payment to MARQUEZ in the amount of $1,000 USD on February 22, 2018.

17.     The FBI served a subpoena on Bank of American, and the subpoena return confirmed that WITNESS 1 made a payment to a Florida based corporation in the amount of $9,000 USD on February 27, 2018.

18.     On January 18, 2021, VICTIM 1 was interviewed by the FBI and HSI.  During the interview, VICTIM 1 identified REYNALDO CRESPO MARQUEZ ("MARQUEZ") as "El Nino," and JOSE MIGUEL GONZALEZ VIDAL ("VIDAL") as "El Chupa," as some of the men who participated in the kidnapping and torture of him and other migrants. On February 23, 2021, during a follow-up interview, VICTIM 1 reviewed additional photo line-ups, each depicting six individuals.  VICTIM 1 identified **PEREZ GONZALEZ** as "Peseta," one of the men who kidnapped and tortured him and the other Cuban migrants.

<u>VICTIM 2</u>

19.     In or around February of 2018 VICTIM 2 was contacted by an unknown female who asked her if she wanted to leave Cuba for the United States.  The lady told VICTIM 2 that she was being forced to work as a recruiter for a human smuggling organization, and her job was

7

to get others to leave Cuba for the United States, in order to pay off her husband's smuggling fees. The lady told VICTIM 2 that she was forced to work for the human smuggling organization because they had kidnapped her husband in Mexico and this was how she had to pay them for his release. The lady told VICTIM 2 that the human smuggling organization charged $10,000 USD to get Cuban migrants to the United States.

20.     On or about February 17, 2018, VICTIM 2 and approximately thirteen (13) other Cuban migrants, including both men and women, boarded a go-fast style vessel in Cuba believing they were going to be smuggled into the United States. VICTIM 2 observed two male crewmembers on the vessel; the captain who used the alias "El Nino," who is MARQUEZ, and his assistant **PEREZ GONZALEZ,** who used the alias "Peseta." When VICTIM 2 and the other migrants first boarded the smuggling vessel, she observed two male migrants from her group, VALDES and another co-conspirator, discussing with MARQUEZ and **PEREZ GONZALEZ** how they were also members of the human smuggling organization who were fleeing from Cuban Law Enforcement to work for the human smuggling organization in Mexico. VICTIM 2 also observed several extra fuel tanks on the vessel that were used to refuel the vessel at-sea.

21.     After approximately twelve hours at sea, the migrants arrived at a beach in Mexico. When the migrants arrived, they waded in the water until they reached the beach where other co-conspirators were waiting for them. The migrants were loaded into a van and taken to a house that the kidnappers called "La Finca." Based on my training and experience, I know that the Spanish word "La Finca," translates to the English word, "the farm." VICTIM 2 described La Finca as having a pool on the property and was owned by one of the co-conspirators. When VICTIM 2 and the migrants first arrived at "La Finca," the kidnappers instructed the migrants to take off their clothing, bathe, change clothes, and give up all their belongings to the kidnappers. VICTIM 2 and

8

the other migrants were then locked in rooms, where the males were separated from the females, and were not allowed to leave.

22.     The following day, the other kidnappers selected one migrant at a time to go into a room with them where they were told to contact a family member who would pay for them to be released and sent to the United States.  When it was VICTIM 2's turn to contact her family member, she provided the kidnappers with the telephone number of her family member, WITNESS 2, who lived in Miami, Florida.  **PEREZ GONZALEZ** placed the first phone call to WITNESS 2 in Miami, Florida and told him he had to pay $10,000 USD for VICTIM 2 to be released, or they would kill VICTIM 2.  WITNESS 2 told the kidnappers that he did not have $10,000 USD to pay them.  WITNESS 2 then contacted another family member, who was able to send the kidnappers $1,000 USD via Western Union.  VICTIM 2 was held at La Finca for approximately fifteen (15) days.  While she was at La Finca, she observed another group of migrants there kidnapped who were taken to another location the kidnappers referred to as "El Calabozo."

23.     While VICTIM 2 was kidnapped at La Finca, she observed several men at the house who were involved, and that MARQUEZ and VIDAL were the bosses of the kidnappers.  On one occasion, VICTIM 2 observed VIDAL kick one of the migrants in the face, where she was then instructed to leave the room while MARQUEZ, VIDAL, and other kidnappers stayed in room with the migrant who was further beaten.  The following day, she observed that migrant with his face completely swollen and was unable to open his mouth.  VICTIM 2 stated there was a small window opening in the room where she was held at La Finca and she frequently observed **PEREZ GONZALEZ** and the other kidnappers beating the other migrants.

24.     While VICTIM 2 was still waiting to secure her payment to be released, **PEREZ GONZALEZ** and several other kidnappers, all took turns sexually assaulting her without using

9

any form of contraception.  VICTIM 2 was told that if she could not pay her ransom, they would eventually kill her and sell her organs as her payment.

      25.     After approximately fifteen (15) days at La Finca, the kidnappers took VICTIM 2 and two other female migrants to a house belonging to MARQUEZ.  One of the other female migrants began to have a romantic relationship with MARQUEZ while staying at his house.  That female migrant told VICTIM 2 she observed that MARQUEZ had firearms, tasers, and a large safe where he stored large amounts of cash.  While VICTIM 2 was at the house, the kidnappers started to have a meeting to discuss smuggling another group of migrants.  The kidnappers then left the area to finish their discussion, and VICTIM 2 used that opportunity to escape.  VICTIM 2 soon encountered police officers nearby who drove her around in their police car to locate the house where she stated she had been kidnapped.  VICTIM 2 did not trust the police officers because she was aware that MARQUEZ had connections with a local police officer.  VICTIM 2 was then taken to a detention center and then a hospital where an employee allowed VICTIM 2 to stay with her while she waited for WITNESS 2 to send her enough money to travel to the United States border and seek asylum.  The kidnappers instructed VICTIM 2 and the other migrants that they had to lie to the United States Immigration Officials and say they arrived in Mexico on a raft, and not to mention anything about the human smuggling organization.  VICTIM 2 feared for her life and her family's life so she followed the instructions of the kidnappers.  VICTIM 2 entered the United States in or around June 2018.

      26.     On February 3, 2021, VICTIM 2 was interviewed by the FBI and HSI.  During the interview, VICTIM 2 reviewed a number of photo line-ups, each depicting six individuals. VICTIM 2 identified MARQUEZ as "El Nino," and VIDAL as "El Chupa," as some of the men

who kidnapped and tortured the migrants.  VICTIM 2 used her cellular telephone to provide the FBI with the Facebook Profile of **PEREZ GONZALEZ**, who she identified as "Peseta."

ADDITIONAL INVESTIGATION

27.     As part of the investigation, the FBI reviewed WITNESS 1 and 2's telephone records and confirmed that, during the time of VICTIM 1 and 2's captivity, WITNESS 1 and 2 received several phone calls from several Mexican-based telephone numbers.

28.     The FBI served a subpoena on Western Union and the subpoena return confirmed that VICTIM 2's family member made one payment to a co-conspirator in the amount of $1,000 USD on March 7 of 2018.

29.     Further analysis of Western Union records show that **PEREZ GONZALEZ** received a $1,500 USD payment from a Miami-based person on January 2, 2018, the same day that the Miami-based person sent $1,500 USD to MARQUEZ.  Also, on July 8, 2020, when **PEREZ GONZALEZ** had entered and was in the United States, he sent a Western Union payment to the Mexico-based girlfriend of a co-conspirator, and who is also the mother of the co-conspirator's child in Mexico.

**CONCLUSION**

30.     Based upon the aforementioned information, there is probable cause to believe that **PEREZ GONZALEZ** did knowingly:

    a.   Conspire to encourage and induce an alien to enter the United States, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv) and 1324(a)(1)(B)(i), all in violation of Title 8, United States Code, Section 1324(a)(1)(A)(v)(I);

11

b.  Encourage and induce and alien to enter the United States, in violation of Title 18, United States Code, Section 1324(a)(1)(A)(iv);

c.  Conspire to bring an alien into the United States for financial gain, in violation of Title 18, United States Code, Section 371;

d.  Bring an alien into the United State for financial gain, in violation of Title 8, United States Code, Section 1324(a)(2)(B)(ii);

e.  Conspire to commit kidnapping Conspire to commit kidnapping by using the mail and any means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of the commission of the offense, in violation of Title 18, United States Code, Section 1201(c); and

f.  Commit kidnapping by using the mail and any means, facility, and instrumentality of interstate and foreign commerce in committing and in furtherance of the commission of the offense, in violation of Title 18, United States Code, Section 1201(a)(1).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

_Aaron Spielvogel_
Aaron D. Spielvogel
Special Agent
Federal Bureau of Investigation

Attested to by the Applicant in accordance
with the requirements of Fed. R. Crim. P. 4.1
by FaceTime this 2nd day of April 2021,
in Miami, Florida.

HONORABLE JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE

12

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. _____1:21mj02647 Goodman - 3CBU_____

UNITED STATES OF AMERICA

v.

YOHISMY PEREZ GONZALEZ,
     a/k/a "Peseta,"

       Defendant.

_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?    __Yes  _X_ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)?    __Yes  _X_ No

3. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?    __Yes  _X_ No

4. Did this matter originate from a matter pending in the Southern Region of the United States Attorney's Office prior to November 23, 2020 (Dist. Judge Aileen M. Cannon)?  __Yes  _X_ No

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

By:   _____

Manolo Reboso
Assistant United States Attorney
Southern District of Florida
99 Northeast 4th Street
Miami, FL. 33132-2111
Florida Bar No. 75397
Tel: (305) 961-9091
Fax: (305) 536-4699
E-Mail: Manolo.Reboso@usdoj.gov

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| **YOHISMY PEREZ GONZALEZ,** | ) | Case No.  1:21mj02647 Goodman - 3CBU |
| a/k/a "Peseta," | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant* | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*      **YOHISMY PEREZ GONZALEZ, a/k/a "Peseta,"**                                                      ,
who is accused of an offense or violation based on the following document filed with the court:

❑ Indictment    ❑ Superseding Indictment    ❑ Information    ❑ Superseding Information    ☑ Complaint
❑ Probation Violation Petition    ❑ Supervised Release Violation Petition    ❑ Violation Notice    ❑ Order of the Court

This offense is briefly described as follows:

Conspiracy to Encourage and Induce an Alien to Enter the United States for financial gain and Encouraging and Inducing an Alien to Enter the United States for financial gain, in violation of Title 8, United States Code Sections 1324(a)(1)(A)(iv),1324(a)(1)(A)(v)(I), and 1324(a)(1)(B)(i);
Conspiracy to Bring an Alien into the United States and Bringing an Alien into the United States for financial gain, in violation of Title 18, United States Code, Section 371 and Title 8, United States Code, Section 1324(a)(2)(B)(ii);
Conspiracy to Commit Kidnapping and Kidnapping, in violation of Title 8, United States Code, Sections 1201(a)(1) and 1201(c). ➕

Date:   4/2/21   _____          _____
                                                              *Issuing officer's signature*

City and state:    Miami, Florida                    **Jonathan Goodman, U.S. Magistrate Judge**
                                                              *Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ at *(city and state)* _____ . |
| Date: _____          _____<br>                                                    *Arresting officer's signature*<br><br>                                                    _____<br>                                                    *Printed name and title* |

AO 442  (Rev. 11/11)  Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:  YOHISMY PEREZ GONZALEZ

Known aliases:  Peseta

Last known residence:  7714 Salinas St., Houston, TX

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:  09/07/1983

Social Security number:

Height:                         Weight:

Sex:  Male              Race:  Cuban

Hair:  Black            Eyes:  Brown

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:  Special Agent Aaron Spielvogel, FBI

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: <u>1:21mj02647 Goodman - 3CBU</u>

## <u>BOND RECOMMENDATION</u>

DEFENDANT: <u>**YOHISMY PEREZ GONZALEZ, a/k/a "Peseta,"**</u>

<u>**Pretrial Detention**</u>

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:   **Manolo Reboso**

Last Known Address: _____

_____

_____

What Facility: _____

_____

Agent(s):   **FBI SA Aaron Spielvogel**

**(FBI)**   (SECRET SERVICE)   (DEA)   (IRS)  (ICE) (OTHER)

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**NO.**   1:21mj02647 Goodman - 3CBU

| | |
|---|---|
| **IN RE SEALED CRIMINAL COMPLAINT.** | **UNDER SEAL** |

## MOTION TO SEAL

NOW COMES the United States of America, by and through its undersigned attorney, and respectfully requests this motion, criminal complaint, accompanying affidavit, arrest warrant, bond recommendation form, and any resulting order be SEALED until the arrest of the defendant, or until further order of this Court, excepting the United States Attorney's Office, the Federal Bureau of Investigation, and the United States Marshals Service, which may obtain copies of any complaint, arrest warrant, or other sealed document for purposes of arrest, extradition, or any other necessary cause, for the reason that the defendant may flee should knowledge of the criminal complaint, arrest warrant, and supporting documents become public.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

By:  _____

MANOLO REBOSO
Assistant United States Attorney
Southern District of Florida
99 N.E. 4th Street
Miami, FL 33132-2111
Florida Bar No. 75397
Telephone: (305) 961-9091
Email: Manolo.Reboso@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**NO.** <u>1:21mj02647 Goodman</u> - 3CBU

---

**IN RE SEALED CRIMINAL**
**COMPLAINT.**

---

## SEALED ORDER

The United States of America, having applied to this Court for an Order sealing the motion,

affidavit, attachments, and order, and the Court finding good cause:

IT IS HEREBY ORDERED that this this motion, criminal complaint, accompanying

affidavit, arrest warrant, bond recommendation form, and order shall be filed under seal until the

arrest of the defendant or upon further order of this Court. However, the United States Attorney's

Office, the Federal Bureau of Investigation, and the United States Marshals Service may obtain

copies of the complaint, arrest warrant, or any other sealed document for purposes of arrest,

extradition, or any other necessary cause.

DONE AND ORDERED in Miami, Florida, this <u>2nd</u> day of April, 2021.

_____

HON. JONATHAN GOODMAN
UNITED STATES MAGISTRATE JUDGE